1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)

2
Joel D. Smith (State Bar No. 244902)
Yeremey Krivoshey (State Bar No. 295032)

3
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596

4
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700

5
E-Mail: ltfisher@bursor.com
        jsmith@bursor.con

6
        ykrivoshey@bursor.com

7

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)

8
888 Seventh Avenue
New York, NY  10019

9
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163

10
E-Mail: scott@bursor.com

11
*Attorneys for Plaintiffs*

12

13
UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

14

15

16
TOM TAKANO and TRACY MCCARTHY,
individually and on behalf of all others similarly
situated,

Case No.

17

**CLASS ACTION COMPLAINT**

18
                                    Plaintiffs,

**JURY TRIAL DEMANDED**

19
            v.

20
THE PROCTER & GAMBLE COMPANY,

21
                                    Defendant.

22

23

24

25

26

27

28

Plaintiffs Tom Takano and Tracy McCarthy ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant The Procter & Gamble Company ("P&G," "Procter & Gamble" or "Defendants").  Plaintiffs makes the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF ACTION

1.      To capitalize on consumer demand for "natural" personal care products, Procter & Gamble sells the Herbal Essences Wild Naturals brand of hair products through major retailers around the country and on its website.  But as Procter & Gamble well knows, each of the individual products within the Wild Naturals line contains synthetic and abrasive chemical ingredients.  Thus, the many statements on Wild Naturals' products' labels claiming that the products are "natural," including the very name of the product – Wild Naturals – are false, misleading, and designed to deceive consumers into paying a price premium and choosing Wild Naturals over a competitor's products.

2.      The Wild Naturals products at issue in this complaint include every product ever sold under the Herbal Essences Wild Naturals brand name within the last four years, including, but not limited to:

- Wild Naturals Detoxifying Conditioner
- Wild Naturals Detoxifying Intensive Treatment
- Wild Naturals Detoxifying Shampoo
- Wild Naturals Illuminating Shampoo
- Wild Naturals Illuminating Conditioner
- Wild Naturals Illuminating Dry Oil Spray
- Wild Naturals Rejuvenating Conditioner
- Wild Naturals Rejuvenating Oil Elixir
- Wild Naturals Rejuvenating Shampoo

Collectively, all of the above products are referred to as "Wild Naturals" products or "Products."

3.      By labeling and advertising the Products as "Wild Natural," Defendant creates the impression amongst reasonable consumers that the Products are natural.  However, Defendant fails to adequately inform consumers that the Products contain numerous synthetic, unnatural, and dangerous ingredients.  Indeed, Defendant only lists the synthetic, unnatural ingredients in the Products on the back of the Product packaging in small, hard-to-read print and, even then, fails to inform consumers that many of the ingredients listed are synthetic and unnatural.  Consumers are not experts in the chemical make-up or names of the ingredients disclosed in fine print on the back of the labels and, based on the "natural" representations plastered on each side of the Wild Naturals' labels, reasonably believe that the Products contain only natural ingredients.  Moreover, Defendant omits the synthetic, unnatural ingredients from its website.

4.      Relying on Defendant's false and misleading "natural" claims, Plaintiffs Takano and McCarthy, and the class members they seek to represent, bought Wild Naturals products at a price premium.  Because Plaintiffs and others like them were taken in by Defendant's false and misleading "natural" promises, Plaintiffs bring this class action against Defendant to seek a reimbursement of the premium Plaintiffs and the class members paid based on Defendant's misrepresentations.

5.      As a direct and proximate result of Defendant's false and misleading advertising claims and marketing practices, Plaintiffs and the members of the Classes, as defined herein, purchased the Wild Naturals products.  Plaintiffs and class members purchased Wild Naturals products because they were deceived into believing that Wild Naturals products did not contain unnatural ingredients, and paid a price premium based on the "natural" representations.  As a result, Plaintiffs and class members purchased the Products and have been injured in fact because Wild Naturals contain ingredients that are not natural.  Plaintiffs and the class members have suffered an ascertainable and out-of-pocket loss.  Plaintiffs and members of the Classes seek a refund and/or rescission of the transaction and all further equitable and injunctive relief as provided by applicable law.

6.      Plaintiffs seek relief in this action individually and on behalf of all persons in the United States who purchased Wild Naturals products within the past four years.  Plaintiffs seek relief on a nationwide basis for breach of express and implied warranties.  Plaintiff Takano also seeks relief in this action individually and on behalf of purchasers of Wild Naturals in California for violation of Civil Code §§ 1750, *et seq.*, the California Consumer Legal Remedies Act ("CLRA"), Bus. & Prof. Code §§ 17200, *et seq.*, California's Unfair Competition Law ("UCL"), and Bus. & Prof. Code §§ 17500, *et seq.*, California's False Advertising Law ("FAL").  Plaintiff McCarthy also seeks relief in this action individually and on behalf of purchasers of Wild Naturals products in New York for violation of New York Gen. Bus. Law § 349, and New York Gen. Bus. Law § 350.

## JURISDICTION

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiff, as well as most members of the proposed class, is a citizen of a state different from Defendants.  This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

8.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Plaintiff Takano is a citizen of California, resides in this District, and purchased Wild Naturals products from Defendant in this District.  Moreover, Defendant distributed, advertised, and sold Wild Naturals products, which are the subject of the present complaint, in this District.

## PARTIES

9.      Plaintiff Tom Takano is, and at all times relevant to this action has been, a resident of Sacramento, California.  Within the past 2 years, Plaintiff Takano purchased Herbal Essences Wild Naturals Detoxifying Shampoo on multiple occasions at Rite Aid and CVS in California.  Plaintiff Takano purchased the Wild Naturals products based on claims on the Products' labels that the Products were "natural."  For instance, because the Products prominently displayed the "Wild

Naturals" name, Mr. Takano thought that the Products were made exclusively of natural ingredients and relied on such representation in making his purchases.  Mr. Takano would not have purchased Wild Naturals products had he known that the Products contain ingredients that are not in fact natural.  In purchasing Wild Naturals, Mr. Takano paid a price premium over and above other shampoos that do not purport to be natural.  After using the Wild Naturals products, Mr. Takano noticed that the Products greatly irritated his scalp.

10.     Plaintiff Tracy McCarthy is, and at all times relevant to this action has been, a resident of Holbrook, NY.  Within the past year, Plaintiff McCarthy purchased Herbal Essences Detoxifying Intensive Treatment at a Target store in New York.  Plaintiff McCarthy purchased the Wild Naturals product based on claims on the Product's label that the Product is "natural."  For instance, because the Product prominently displayed the "Wild Naturals" name, Ms. McCarthy thought that the Product was made exclusively of natural ingredients and relied on such representation in making her purchase.  Ms. McCarthy would not have purchased Wild naturals had she known that the Products contain ingredients that are not in fact natural.  In purchasing Wild Naturals, Ms. McCarthy paid a price premium over and above other conditioners that do not purport to be natural.  After using the Wild Naturals product, Ms. McCarthy noticed that the Products dried out her scalp.

11.     Defendant Procter & Gamble Co. is incorporated in the State of Ohio, with a principal place of business at One Procter & Gamble Plaza Cincinnati, Ohio 45202.  Defendant manufactured, marketed, distributed, and sold Wild Naturals products widely throughout California, and this District, during the class period.

12.     Plaintiffs reserve the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

13.     Whenever reference is made in this Complaint to any representation, act, omission, or transaction of a defendant, that allegation shall mean that the defendant did the act, omission, or

transaction through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

**FACTS COMMON TO ALL CAUSES OF ACTION**

**Wild Naturals' Prominent Marketing As Purportedly "Natural" Products**

14.     Defendant's labeling and advertising of Wild Naturals products puts forth a straightforward, material message – that the Products are natural.  This core representation regarding the Products is false and misleading, because the Products in fact contain ingredients that are synthetic and highly chemically processed.

15.     Each of the Products within the Wild Naturals line is sold with a label on the <u>front and back</u> of the Product that prominently states "Wild Naturals."  Accordingly, all purchasers of the Products are exposed to the false and misleading "Wild Naturals" representation.

16.     The following images show that the representation "Wild Naturals" is prominently made on the front and back of each of the Products:

<u>Herbal Essences Wild Naturals Detoxifying Shampoo:</u>

 

Herbal Essences Wild Naturals Detoxifying Conditioner:

 

Herbal Essences Wild Naturals Intensive Treatment:

 

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Herbal Essences Wild Naturals Illuminating Shampoo:

 

Herbal Essences Wild Naturals Illuminating Conditioner

 

1

2

Herbal Essences Wild Naturals Illuminating Dry Oil Spray:

3

4

5

6

7

8

9

 

10

11

12

13

14

Herbal Essences Wild Naturals Rejuvenating Shampoo:

15

16

17

18

19

20

21

 

22

23

24

25

26

27

28

Herbal Essences Wild Naturals Rejuvenating Conditioner:

 

Herbal Essences Wild Naturals Rejuvenating Oil Elixir:

 

17.     Defendant reinforces its main marketing representation that the Products are natural through additional representations on the back label of each of the Products.  For instance, Wild Naturals Detoxifying Conditioner, Wild Naturals Detoxifying Shampoo, Wild Naturals Illuminating Shampoo, Wild Naturals Rejuvenating Conditioner, and Wild Naturals Rejuvenating Shampoo contain the following statement on the back of their labels:

> Strengthen your hair **naturally** with the nurturing properties of Cassia.  Hand-harvested in the lush forests of India, this Ayurvedic herb brings ancient wisdom to modern hair care.

(emphasis added).

18.     The benefits of the purportedly "natural" Products are reinforced by claiming on the back of the above-listed labels that the products are "Fiercely Good For Your Hair."  But the Products are neither "Good For Your Hair" nor "natural," as discussed in further detail below.

19.     Further, Wild Naturals Detoxifying Shampoo states on the back of its label: "Lather, rinse and use with our Detoxifying Conditioner and experience a **naturally** perfect pair." (emphasis added).  In turn, Wild Naturals Detoxifying Conditioner states on the back of its label: "Use with our Detoxifying Shampoo and experience a **naturally** perfect pair." (emphasis added). Similarly, Wild Naturals Intensive Treatment states on the back of its label: "Paid with our Detoxifying Shampoo and Conditioner for a **naturally** perfect regimen." (emphasis added). Similarly, Wild Naturals Illuminating Shampoo states on the back of its label: "Lather, rinse and use with our Illuminating Conditioner and experience a **naturally** perfect pair." (emphasis added). Wild Naturals Illuminating Dry Oil Spray state on the back of their label: "Pair with our Illuminating Shampoo and conditioner for a **naturally** perfect regimen." (emphasis added). Further, Wild Naturals Rejuvenating Shampoo states on the back of its label: "Lather, rinse and use with our Rejuvenating Conditioner and experience a **naturally** perfect pair." (emphasis added).  In turn, Wild Naturals Rejuvenating Conditioner states on the back of its label: "Use with our Rejuvenating Shampoo and experience a **naturally** perfect pair." (emphasis added).

20.     Defendant further reinforced the common, uniform representation that the Products are natural on its website – herbalessences.com.[1]  As part of its uniform marketing campaign that the Products are natural, Defendant's website has used the following statement to promote the Wild Naturals products:

- Wild Naturals Detoxifying Shampoo: "WHAT: Detoxifying shampoo gently lifts impurities from hair for **naturally** beautiful, clean hair." (emphasis added).

- Wild Naturals Detoxifying Conditioner: "WHAT: Detoxifying, lightweight conditioner that softens hair for **naturally** beautiful, clean hair." (emphasis added).

- Wild Naturals Illuminating Conditioner: "WHAT: Shine-boosting conditioner that reveals your hair's **natural** radiance."  "WHO: Anyone hoping to ditch dull hair and **naturally** activate hair and shine." (emphasis added).

- Wild Naturals Illuminating Dry Oil: "WHAT: Dry oil spray that amplifies your hair's **natural** brilliance with every spray."  "HOW: Pair with our Wild Naturals Illuminating Shampoo and Conditioner for a **naturally** perfect regimen." (emphasis added).

- Wild Naturals Illuminating Shampoo: "WHAT: Shine-boosting shampoo cleanses to reveal your hair's **natural** radiance."  "WHO: Anyone hoping to ditch dull and **naturally** activate hair shine." (emphasis added).

- Wild Naturals Rejuvenating Conditioner: "WHO: Anyone hoping to renew and restore their hair's **natural** health." (emphasis added).

- Wild Naturals Rejuvenating Shampoo: "WHO: Anyone hoping to renew and restore their hair's **natural** health." (emphasis added).

21.     Defendant's website has never disclosed the presence of non-natural ingredients in Wild Naturals.

22.     Online retailers that sell and market the Wild Naturals products also use nearly identical representations emphasizing the purported "natural" quality of the Products.  For

---

[1] Defendant removed all references to Wild Naturals from its website in response to Plaintiff Takano's November 7, 2016 CLRA demand letter, attached hereto as Exhibit A.

example, the "Product Description" for Herbal Essences Wild Naturals Detoxifying Conditioner on amazon.com states that "[t]his formula gives you **naturally** luscious hair while you condition." (emphasis added).  The "item details" sections of Wild Naturals pages at target.com contain almost word-for-word descriptions of the Products as those on herbalessences.com.  The "Description" pages for Wild Naturals products at walgreens.com advertise the Products with statements like "Promotes **Naturally** Luscious Hair." (emphasis added).

**<u>Wild Naturals Products Contain Ingredients That Are Not Natural</u>**

23.     Defendant's representations that the Products are "natural" are false and misleading because each of the Products contains multiple ingredients that are synthetic or highly chemically processed.

24.     The term "natural" means "existing in nature and not made or caused by people; coming from nature" or "not having any extra substances or chemicals added; not containing anything artificial."[2]  Industry and regulatory definitions of natural are also instructive in determining whether ingredients are "natural."  For example, the National Advertising Division of the Better Business Bureau has found that a "natural" ingredient does not include one that, while "literally sourced in nature (as is every chemical substance),…is, nevertheless subjected to extensive processing before metamorphosing into the ingredient that is included in the final product."  *Tom's of Maine* (*Tom's of Maine Natural Mouthwash*), Report #3470, NAD/CARU Case Reports 4 (June 1998).

25.     The United States Food and Drug Administration ("FDA") has also issued guidance on the term "natural" in the context of food, "as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food."  *Food Labeling*; 58 Fed. Reg. 2302.

26.     The United States Department of Agriculture ("USDA") has issued a Food Standard and Labeling Policy Book (Aug. 2005), which states that the term "natural" may be used on labeling for products that contain processed ingredients only where such ingredients are subjected

---

[2] http://merriam-webster.com/dictionary/natural

to "minimal" processing.  The policy recognizes that "[r]elatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing."  Office of Policy, Program & Employee Dev., Food Safety & Inspection Services, U.S. Dept. of Agriculture, *Food Standards and Labeling Policy Book* (2005).[3]  The USDA also defines "nonsynthetic (natural)" as a "substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic process…" 7 C.F.R. § 205.2.  In contrast, the USDA defines "synthetic" as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from a naturally occurring plant, animal, or mineral…" 7 U.S.C. § 6502 (21).

27.     Defendant's Products contain, at a minimum, the following unnatural ingredients:

- Sodium Laureth Sulfate and Sodium Lauryl Sulfate – These compounds are synthetic foaming agents used to break down water in grease, commonly also found in floor cleaners, engine degreasers, and car wash detergents.  They are well-known skin irritants that are rapidly absorbed by the body and can have harmful log-term effects, including, *inter alia*, corroding hair follicles, impairing the ability to regrow hair, and skin irritation.

- Fragrance – The synthetic fragrances used in the Wild Naturals products can have as many as 200 ingredients.  Some of the problems caused by these chemicals are headaches, dizziness, rash, hyperpigmentation, violent coughing, vomiting, and skin irritation.

- Methylchloroisothiazolinone and Methylisothiazolinone – These are synethetic preservatives and are among the most common irritants, sensitizers and causes of contact skin allergies.

- Disodium EDTA/EDTA – This is a synthetic chemical typically used in cosmetics as a preservative, chelator, and stabilizer, and to enhance foaming and cleaning.  It is mainly synthesized from ethylenediamine, formaldehyde, and sodium cyanide.  It has been found to be both cytotoxic and genotoxic in laboratory animals.

---

[3] http://fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf

- Cocamidopropyl Betaine – This is a highly processed ingredient made by reacting dimethylaminopropylamine with fatty acids from coconut oil.  The result of this process is then reacted with chloroacetic acid to form  the final substance.  It is a known skin irritant.
- Citric Acid – This is a synthetic preservative.
- Sodium Citrate and Sodium Benzoate – These are highly processed ingredients that are used as preservatives or as emulsifying agents.
- Polysorbate 20 – This is a highly processed and synthetic ingredient typically used as an emulsifier or a detergent.
- Stearyl alcohol – This is used as hair coating or an emulsifier and is prepared from stearic acid or a fat by the process of catalytic hydrogenation.
- Bis-Aminopropyl Dimethicone – This is a silicone commonly used in conditioners as a surfacant.  It is a synthetic compound.
- Peg-2m – This is a form of synthetic polyethylene glycol that increases viscosity.
- Blue 1, Red 33, Yellow 5, Green 6 – These are all synthetic dies added for color.
- Cetearyl Alcohol – This is a highly processed emulsifier that is produced by hydrogenating fatty oils.
- Polysorbate 60 – This is a highly synthetically processed emulsifier and thickening agent.
- Cyclopentasiloxane – This is a synthetic silicone mainly used as a solvent or lubricant.

28.      While not each Product contains all of the above specified ingredients, all of the Wild Naturals products have an overlap of at least one, if not multiple, common not natural ingredients.  For example, each of the Wild Naturals products contain synthetic fragrance as an ingredient.  All Wild Naturals products other than the Illuminating Oil Spray and Rejuvenating Oil Elixir also contain Methylchloroisothiazolinone and Methylisothiazolinone.

29.      Other ingredients in the Products may also be not natural as well.  Plaintiffs' investigation is ongoing and they will seek to amend the Complaint to specify other potential unnatural ingredients in the future.

30.     No reasonable definition of "natural" includes ingredients that, even if sourced from "nature," are subject to extensive, transformative chemical processing before their inclusion in a product.  Given that Defendant's Products include numerous synthetic, highly processed, and otherwise unnatural ingredients, as detailed above, Defendant's labels and packaging are false and misleading.

31.     Plaintiffs and the other Class members were among the intended recipients of Defendant's deceptive representations and omissions described herein. Defendant's deceptive representations and omissions, as described herein, are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions. Plaintiffs purchased the Products because they wanted natural personal care products. Plaintiffs were injured by Defendant's deceptive representations and omissions because they would not have purchased the Products had they been truthfully advertised and labeled and because they paid a price premium for Defendant's Products.

32.     In making the false, misleading, and deceptive representations and omissions, Defendant knew and intended that consumers would pay a premium.  Plaintiffs bring this action on behalf of the proposed Class to stop Defendant's misleading practices and compensate Plaintiffs and the Class for money lost.

## **CLASS REPRESENTATION ALLEGATIONS**

33.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased Wild Naturals products within the past four years.  Excluded from the Class are persons who made such purchase for the purpose of resale.  Also excluded from the Class are Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns.

34.     Plaintiff Takano also seeks to represent a subclass of all Class members who purchased Wild Naturals in California (the "California Subclass").

35.     Plaintiff McCarthy also seeks to represent a subclass of all Class members who purchased Wild Naturals in New York (the "New York Subclass").

36.     Plaintiffs are members of the Classes they seek to represent.

37.     Members of the Class and Subclasses are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Subclasses number in the hundreds of thousands.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

38.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members, including but not limited to:

- Whether Defendant breached express or implied warranties made to Plaintiffs and the Class;

- Whether Defendant's marketing of Wild Naturals products is false, misleading, and/or deceptive;

- Whether Defendant's marketing of Wild Naturals is an unfair business practice;

- Whether Defendant's Wild Naturals products contain ingredients that are not natural;

- Whether Defendant violated the CLRA;

- Whether Defendant violated the UCL;

- Whether Defendant violated the FAL;

- Whether Defendant violated the GBL;

- Whether Class Members suffered an ascertainable loss as a result of Defendant's misrepresentations; and

- Whether, as a result of Defendant's misconduct as alleged herein, Plaintiffs and the Class are entitled to restitution, and/or monetary relief, and, if so, the amount and nature of such relief.

39.     The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs purchased Wild Naturals in reliance on the representations and warranties described above, and suffered a loss as a result of those purchases.

40.     Plaintiffs are adequate representatives of the Class and Subclasses because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

41.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclasses members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### (California's Consumer Legal Remedies Act "CLRA", Cal. Civil Code §§ 1750, *et. seq.*)

42.     Plaintiff Takano brings this Count individually and on behalf of the members of the California Subclass

43.     Plaintiff Takano repeats the allegations contained in the paragraphs above as if fully set forth herein.

44.     Plaintiff and the California Subclass members are consumers who purchased the Wild Naturals products for personal, family, or household purposes.  Accordingly, Plaintiff and the

California Subclass members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).  Plaintiff and the California Subclass members are not sophisticated experts with independent knowledge of the formulation of or ingredients in the Wild Naturals products.

45.     At all relevant times, the Wild Naturals products constituted "good[s]" as that term is defined in Cal. Civ. Code § 1761(a).

46.     At all relevant times, Defendant was a "person(s)" as that term is defined in Civ. Code § 1761(c).

47.     At all relevant times, Plaintiff's purchase of the Wild Naturals products, and the purchases of the Wild Naturals by other California Subclass members, constituted  "transactions" as that term is defined in Cal. Civ. Code § 1761(e).  Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of the Wild Naturals products to consumers.

48.     The policies, acts, and practices described in this Complaint were intended to and did result in the sale of the Wild Naturals products to Plaintiff and the California Subclass. Defendant's practices, acts, policies, and course of conduct violated the CLRA §1750 *et seq.* as described above.

49.     Defendant represented that the Wild Naturals products had sponsorship, approval, characteristics, uses, and benefits which they did not have in violation of Cal. Civ. Code § 1770(a)(5).

50.     Defendant represented that the Wild Naturals products were of a particular standard, quality, and grade, when they were another, in violation of California Civil Code § 1770(a)(7).

51.     Defendant violated California Civil Code §§ 1770(a)(5) and (a)(7) by representing that the Wild Naturals products were natural when, in fact, the Products contain ingredients that are not natural.

52.     Defendant represented that the Wild Naturals products were of a particular standard or quality when Defendant was aware that they were of another in violation of § 1770(a)(7) of the CLRA.  Defendant represented that the Wild Naturals products were natural when the Products contain ingredients that are not natural.

53.     Defendant advertised the Wild Naturals products with the intent not to sell them as advertised in violation of § 1770(a)(9) of the CLRA.  Defendant did not intend to sell the Wild Naturals products as advertised because Defendant knew that the Products contained ingredients that were not natural.

54.     Plaintiff and the California Subclass members suffered injuries caused by Defendant's misrepresentations because: (a) Plaintiff and the California Subclass members would not have purchased the Wild Naturals products if they had known the true facts; (b) Plaintiff and the California Subclass paid an increased price for the Products due to the mislabeling of the Products; and (c) the Products did not have the level of quality, or value as promised.

55.     Prior to the filing of this complaint, a CLRA notice letter was served on Defendant which complies in all respects with California Civil Code § 1782(a).  A true and correct copy of Plaintiff's letter is attached as Exhibit A.  Defendant was advised that in the event that the relief requested had not been provided within thirty (30) days, Plaintiff would bring an action for damages pursuant to the CLRA.  Wherefore, Plaintiff seeks damages, including punitive damages, restitution, and injunctive relief for this violation of the CLRA.

56.     WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## COUNT II
### (False Advertising Law "FAL," Cal. Bus. & Prof. Code §§ 17500 *et seq.*)

57.     Plaintiff Takano brings this Count individually and on behalf of the California Subclass.

58.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

59.     California's FAL (Bus. & Prof. Code §§17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

60.     Throughout the Class Period, Defendant committed acts of false advertising, as defined by the FAL, by using false and misleading statements to promote the sale of the Wild Naturals products, as described above, and including, but not limited to, representing that the Products were natural.

61.     Defendant knew or should have known, through the exercise of reasonable care, that its statements were untrue and misleading.

62.     Defendant's actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

63.     As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the California Subclass have suffered injury and actual out-of-pocket losses as a result of Defendant's FAL violation because: (a) Plaintiff and the California Subclass would not have purchased the Products if they had known the true facts; (b) Plaintiff and the California Subclass paid an increased price due to the misrepresentations about the Wild Naturals products; and (c) the Products did not have the promised quality, or value.

64.     Plaintiff brings this action pursuant to Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective

disclosures to consumers.  Plaintiff and the California Class are therefore entitled to: (a) an order

requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all

monies paid to Defendant as a result of their deceptive practices; (c) interest at the highest rate

allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia,

California Code of Civil Procedure §1021.5.

65.     WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## COUNT III

**(The "Unlawful Prong" of California's Unfair Competition Law "UCL,"**
**Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

66.     Plaintiff Takano brings this Count on behalf of the California Subclass.

67.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set

forth herein.

68.     The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair

competition shall mean and include unlawful, unfair or fraudulent business practices and unfair,

deceptive, untrue or misleading advertising ...."  The UCL also provides for injunctive relief and

restitution for UCL violations.

69.     By proscribing any unlawful business practice, section 17200 borrows violations of

other laws and treats them as unlawful practices that the UCL makes independently actionable."

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180

(1999) (citations and internal quotation marks omitted).

70.     Virtually any law or regulation – federal or state, statutory, or common law – can

serve as a predicate for an UCL "unlawful" violation.  *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App.

4th 1342, 1383 (2012).

71.     Defendant violated the "unlawful prong" by violating the CLRA, the FAL, and the

NY GBL as well as by breaching express warranties as described herein.

72.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the California Subclass have suffered injury and actual out-of-pocket losses as a result of Defendant's UCL "unlawful prong" violation because: (a) Plaintiff and the California Subclass would not have purchased the Wild Naturals products if they had known the true facts regarding the contents of the Products; (b) Plaintiff and the California Subclass paid an increased price due to the misrepresentations about the Products; and (c) the Products did not have the promised quality, or value.

73.    Pursuant to Bus. & Prof. Code §17203, Plaintiff and the California Subclass are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

74.    WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## COUNT IV

**(The "Fraudulent Prong" of California's Unfair Competition Law "UCL,"
Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

75.    Plaintiff Takano brings this Count individually and on behalf of the California Subclass.

76.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

77.    The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

78.    Defendant's conduct, described herein, violated the "fraudulent" prong of the UCL because Defendant represented that the Products were natural when, in fact, the Products contain

ingredients that are not natural.  As described above, Defendant misrepresented that the Products were natural.

79.     Plaintiff and the California Subclass members are not sophisticated experts with independent knowledge of the formulation or ingredients of the Products, and they acted reasonably when they purchased the Products based on their belief that Defendant's representations were true.

80.     Defendant knew or should have known, through the exercise of reasonable care, that its representations about the Products were untrue and misleading.

81.     As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the California Subclass have suffered injury and actual out-of-pocket losses as a result of Defendant's UCL "fraudulent prong" violation because: (a) Plaintiff and the California Subclass would not have purchased the Products if they had known the true facts regarding the contents of the Products; (b) Plaintiff and the California Subclass paid an increased price due to the misrepresentations about the Products; and (c) the Products did not have the promised quality, or value.

82.     Pursuant to Bus. & Prof. Code §17203, Plaintiff and the California Subclass are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

**<u>COUNT V</u>**

**(The "Unfair Prong" of California's Unfair Competition Law "UCL,"
Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

83.     Plaintiff Takano brings this Count individually and on behalf of the California Subclass.

84.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

85.     The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

86.     Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.  Defendant's conduct is unfair in that the harm to Plaintiff and the California Subclass arising from Defendant's conduct outweighs the utility, if any, of those practices.

87.     Defendant's practices as described herein are of no benefit to consumers who are tricked into believing that the Products are natural.  Defendant's practice of injecting misinformation into the marketplace about ingredients that are and are not natural is of no benefit to consumers.  Consumers trust companies like Defendant, which focus their entire Wild Naturals product line on the purported naturalness of the Products, to provide accurate information about "natural" ingredients.  Taking advantage of that trust, Defendant misrepresents the ingredients in the Products to sell more personal care products at a higher price and to differentiate the Products from other personal care products.  Consumers believe that Defendant is an authority on "natural" ingredients and therefore believe Defendant's "natural" representations.

88.     As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the California Subclass have suffered injury and actual out-of-pocket losses as a result of Defendant's UCL "unfair prong" violation because: (a) Plaintiff and the California Subclass would not have purchased the Products if they had known the true facts

regarding the contents of the Products; (b) Plaintiff and the California Subclass paid an increased

price due to the misrepresentations about the Products; and (c) the Products did not have the

promised quality, or value.

89.     Pursuant to Bus. & Prof. Code §17203, Plaintiff, and the California Subclass are

therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition

alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive

practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's

attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

## COUNT VI

### (Deceptive Acts or Practices, New York Gen. Bus. Law. § 349)

90.     Plaintiff McCarthy brings this Count individually and on behalf of the members of

the New York Subclass.

91.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set

forth herein.

92.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive

acts and practices.  These acts and conduct include Defendant's misrepresentations that the Wild

Naturals products were natural, when, in fact, the Products contain ingredients that are not natural.

Additionally, Defendant seeks to differentiate itself from other personal care products by basing the

Wild Naturals line on "natural" claims.  This is a deceptive act and an unfair practice because

Defendant knows that the Wild Naturals products contain a majority of ingredients that are not

natural.

93.     The foregoing deceptive acts and practices where directed at consumers.

94.     The foregoing deceptive acts and practice are misleading in a material way because they fundamentally misrepresent the characteristics and benefits of Wild Naturals products to induce consumers to purchase the Products.

95.     Plaintiff McCarthy and members of the New York Subclass were injured because: (a) they would not have purchased the Products had they known that the Products were not natural; (b) they overpaid for the Wild Naturals products because they are sold at a price premium when compared to similar products that do not contain these misrepresentations; and (c) the Products did not have the characteristics and benefits promised.  As a result, Plaintiff McCarthy and the New York Subclass were damaged by the difference in value between the Products as advertised and the Products as actually sold.

96.     As a result of Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the misrepresentations described herein, Plaintiff McCarthy and members of the New York Subclass have suffered and continue to suffer economic injury.

97.     Plaintiff McCarthy and members of the New York Subclass suffered an ascertainable loss caused by Defendant's misrepresentations equal to the price premium.

98.     On behalf of herself and other members of the New York Subclass, Plaintiff Moran seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT VII

### (False Advertising, New York Gen. Bus. Law. § 350)

99.     Plaintiff McCarthy brings this Count individually and on behalf of the members of the New York Subclass.

100.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

101.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices.  These acts and conduct include Defendant's misrepresentations that the Products were natural, when, in fact, the Products contain ingredients that are not natural. Additionally, Defendant seeks to differentiate itself from other personal care products by basing the Wild Naturals line on "natural" claims.  This is a deceptive act and an unfair practice because Defendant knows that the Products contain ingredients that are not natural.

102.    Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law.

103.    Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the misrepresentations and omissions described herein, were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

104.    Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the misrepresentations described herein, have resulted in consumer injury or harm to the public interest.

105.    Plaintiff McCarthy and members of the New York Subclass were injured because: (a) they would not have purchased the Products had they known that the Products were not natural; (b) they overpaid for the Products because they are sold at a price premium when compared to similar products that do not contain these misrepresentations; and (c) the Products did not have the characteristics and benefits promised.  As a result, Plaintiff McCarthy and the New York Subclass were damaged by the difference in value between Products as advertised and the Products as actually sold.

106.    As a result of Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the misrepresentations described herein, Plaintiff McCarthy and members of the New York Subclass have suffered and continue to suffer economic injury.

107.    Plaintiff McCarthy and members of the New York Subclass suffered an ascertainable loss caused by Defendant's misrepresentations equal to the price premium. On behalf of herself and other members of the New York Subclass, Plaintiff McCarthy seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT VIII
### Negligent Misrepresentation

108.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

109.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

110.    As discussed above, Defendant misrepresented that the Wild Naturals products were natural.  In light of these misrepresentations, Defendant had a duty to disclose that most of the ingredients in its Products were not, in fact, natural.

111.    At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

112.    At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about Wild Naturals products.

113.    The negligent misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase Wild Naturals products.

114.    Plaintiff and Class members would not have purchased Wild Naturals if the true facts had been known.

115.    The negligent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT IX
### Fraud

116.    Plaintiffs hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

117.    Plaintiffs brings this claim individually and on behalf of the members of the proposed Class against Defendant.

118.    As discussed above, Defendant provided Plaintiff and Class members with false or misleading material information and failed to disclose material facts about Wild Naturals, including but not limited to the fact that the majority of the ingredients in the Products are not natural.  These misrepresentations and omissions were made with knowledge of their falsehood.

119.    The misrepresentations and omissions made by Defendants, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase Wild Naturals.

120.    The fraudulent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT X
### (Breach of Express Warranty)

121.    Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

122.    Plaintiffs bring this Count individually and on behalf of the members of the Class.

123.    In connection with the sale of the Wild Naturals, Defendant issued express warranties including that the Wild Naturals were natural.

124.    Defendant's affirmations of fact and promises made to Plaintiffs and the Class on Wild Naturals' labels became part of the basis of the bargain between Defendant on the one hand, and Plaintiffs and the Class Members on the other, thereby creating express warranties that the Wild Naturals products would conform to Defendant's affirmations of fact, representations, promises, and descriptions.

125.    Defendant breached its express warranties because the Wild Naturals contains ingredients that are not natural.  In short, the Wild Naturals products are not as expressly warranted.

126.    Prior to filing this complaint, Plaintiffs provided advance reasonable notice to Defendant of the allegations set forth herein, and Defendant failed to remedy or cure.  Plaintiffs and the Class Members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased the Wild Naturals if they had known the true facts; (b) they paid for the Wild Naturals due to the mislabeling; and (c) the Wild Naturals products did not have the quality, or value as promised.  As a result, Plaintiffs and the Class have been damaged by the difference in value between the Wild Naturals products as advertised and the Wild Naturals products as actually sold.

WHEREFORE, Plaintiffs pray for judgment as hereafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.    For an order certifying the nationwide Class and the Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclasses and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclasses members;

b.      For an order declaring the Defendant's conduct violates the statutes referenced

herein;

c.      For an order finding in favor of Plaintiffs, the nationwide Class, and the Subclasses

on all counts asserted herein;

d.      For compensatory and punitive damages in amounts to be determined by the Court

and/or jury;

e.      For prejudgment interest on all amounts awarded;

f.      For an order of restitution and all other forms of equitable monetary relief;

g.      For injunctive relief as pleaded or as the Court may deem proper; and

h.      For an order awarding Plaintiffs and the Class and Subclasses their reasonable

attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demands a trial by jury of all issues so triable.

Dated: February 21, 2017                     Respectfully submitted,

                                             **BURSOR & FISHER, P.A.**


                                             By:     */s/ Yeremey Krivoshey*
                                                     Yeremey Krivoshey

                                             **BURSOR & FISHER, P.A.**
                                             L. Timothy Fisher (State Bar No. 191626)
                                             Joel D. Smith (State Bar No. 244902)
                                             Yeremey Krivoshey (State Bar No. 295032)
                                             1990 North California Boulevard, Suite 940
                                             Walnut Creek, CA  94596
                                             Telephone: (925) 300-4455
                                             Facsimile:  (925) 407-2700
                                             E-Mail: ltfisher@bursor.com
                                                     jsmith@bursor.con
                                                     ykrivoshey@bursor.com

                                             **BURSOR & FISHER, P.A.**
                                             Scott A. Bursor (State Bar No. 276006)
                                             888 Seventh Avenue
                                             New York, NY  10019
                                             Telephone: (212) 989-9113
                                             Facsimile:  (212) 989-9163

E-Mail: scott@bursor.com

*Attorneys for Plaintiffs*

CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

I, Tom Takano, declare as follows:

1.      I am a plaintiff in this action.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.      The complaint filed in this action is filed in the proper place because Defendant Procter & Gamble Co. sells hundreds of thousands of its products in this District, including the Wild Naturals products at issue in this litigation.


I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on February 7, 2017 in Sacramento, California.


TOM TAKANO

**EXHIBIT A**

**BURSOR & FISHER**

P.A.

1990 N. California Blvd.
SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

YEREMEY KRIVOSHEY
Tel: 925.300.4455
Fax: 925.407.2700
ykrivoshey@bursor.com

November 7, 2016

*Via Certified Mail - Return Receipt Requested*

CT Corporation
The Procter & Gamble Company
1300 East Ninth Street
Cleveland, OH 44114

Re:     *Demand Letter Pursuant to California Civil Code § 1782,*
        *Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, et seq., and other applicable laws.*

To Whom It May Concern:

This letter serves as a notice and demand for corrective action on behalf of my client, Tom Takano and all other persons similarly situated, arising from breaches of warranty under the Magnuson-Moss Warranty Act and violations of numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9). This letter also serves as notice pursuant to Cal. Com. Code § 2607(3)(a) concerning the breaches of express and implied warranties described herein.

You have participated in the manufacture, marketing, and sale of Herbal Essences Wild Naturals line of hair products, including Wild Naturals Detoxifying Conditioner, Wild Naturals Intensive Treatment, Wilf Naturals Detoxifying Shampoo, Wild Naturals Illuminating Shampoo, Wild Naturals Illuminating Conditioner, Wild Naturals Illuminating Dry Oil, Wild naturals Rejuvenating Conditioner, Wild Naturals Rejuvenating Oil Elixir, and Wild Naturals Rejuvenating Shampoo (collectively, "Wild Naturals" or "Products"). On the Wild Naturals' labels and on your website, http://herbalessences.com/en-us/shop-products/browse-by-collections/wild-naturals, you misrepresent the Products as "natural."

These representations regarding the "natural" nature of Wild Naturals are false and misleading, because the Products actually contain numerous synthetic and highly chemically processed ingredients. These ingredients include, but are not limited to, sodium lauryl sulfate, methylchloroisothiazolinone, methylisothiazolinone, and fragrance.

Mr. Takano, a resident of California, purchased Wild Naturals products based on labeling stating that the Products were "natural." He would not have purchased or would have paid significantly less for the Products if the labels had not stated that the Products were natural.

Mr. Takano is acting on behalf of a class defined as all persons nationwide who purchased the Products (hereafter, the "Class").  A similar class of purchasers of Aveeno "Active Naturals" was recently certified in *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, __ F.R.D. __, 2016 WL 5817012 (S.D.N.Y. Oct. 4, 2016).  Mr. Takano is confident that a class will be certified on similar grounds here should you fail to take corrective action set forth herein.

To cure the defects described above, we demand that you (1) cease and desist from continuing to mislabel the Products; (2) issue an immediate recall on any Products bearing misleading "natural" statements; and (3) make full restitution to all purchasers of the Products of all purchase money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning the ingredients, formula, and manufacturing process for the Products;

2. All communications with the U.S. Food and Drug Administration concerning the product development, manufacturing, marketing and sales of the Products;

3. All documents concerning the advertisement, marketing, labeling, distribution, or sale of the Products; and

4. All communications with customers concerning complaints or comments concerning the Products.

We are willing to negotiate to attempt to resolve the demands asserted in this letter.  If you wish to enter into such discussions, please contact me immediately.  If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation.  If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

Yeremey O. Krivoshey